UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-443-GNS-CHL

SHARON MAXINE BROWN,

                                                            **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY,                 **Defendant.**

### REPORT AND RECOMMENDATION

Before the Court is the complaint of Plaintiff, Sharon Maxine Brown ("Brown"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits. (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 12.) Brown filed a brief in support and a fact and law summary on November 26, 2019 (DN 17), and the Commissioner filed a fact and law summary on February 26, 2020 (DN 22). Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.     FINDINGS OF FACT**

In a June 23, 2011 decision on claimant's application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income, the claimant was found disabled as of April 15, 2010. (DN 14-3, at PageID # 137.) On October 20, 2014, a cessation of disability determination was made for Plaintiff's Title II and Title XVI benefits. (DN 14-3, at PageID #116-119.) On June 21, 2018, Administrative Law Judge Stacey Foster (the "ALJ") conducted a hearing on Brown's application (20 CFR 404.936(c); 20 CRF 416.1436(c).) (DN 14-2, at PageID #66.) In a decision

dated September 19, 2018, the ALJ engaged in the eight-step evaluation process for the Title II claim and a seven-step evaluation process for the Title XVI claim promulgated by the Commissioner to determine whether the individual continues to be disabled. (DN 14-2, at PageID # 66). In doing so, the ALJ made these findings:

(1) The most recent favorable medical decision finding that the claimant was disabled is the decision dated June 25, 2011. This is known as the "comparison point decision" or CPD. (DN 14-2, at PageID # 68.)

(2) At the time of the CPD, the claimant had the following medically determinable impairment: open wound of the lower limb. This impairment was found to meet section(s) 1.08 (Soft tissue injury) of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d).) (*Id.*)

(3) As of October 1, 2014, the date the claimant's disability ended, the claimant had not engaged in substantial gainful activity (20 CFR 404.1594(f)(1).) (*Id.*)

(4) The medical evidence establishes that, as of October 1, 2014, the claimant had the following medically determinable impairments: degenerative disc disease of the lumbar spine, depressive disorder, and posttraumatic stress disorder. These are the claimant's current impairments. (*Id.*)

(5) Since October 1, 2014, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416, 925 and 416.926). (*Id.*)

(6) Medical improvement occurred as of October 1, 2014 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)). (DN 14-2, at PageID # 69.)

(7) The medical improvement is related to the ability to work because, as of October 1, 2014, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)). (DN 14-2, at PageID #70.)

(8) Beginning on October 1, 2014, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)). (*Id.*)

(9) Beginning on October 1, 2014, based on the current impairments, the claimant has had the residual functional capacity to perform sedentary work

as defined in 20 CFR 404.1567(a) and 416.967(a), which consists of lifting and carrying up to ten pounds occasionally and less than ten pounds frequently, sitting up to thirty minutes at a time, and standing fifteen to twenty minutes at a time. She is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She should avoid concentrated exposure to extreme cold, and all exposure to hazards. The claimant is able to understand, remember, and carry out simple instructions and procedures involving brief and short learning periods (defined as periods of thirty days or less). She is able to maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation. She is limited to occasional interaction with the general public. The claimant is able to adapt to the pressures and changes of a routine work environment. (*Id.*)

(10) Beginning on October 1, 2014, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965). (DN 14-2, at PageID # 74.)

(11) On October 1, 2014, the claimant was a younger individual age 18-44 (20 CFR 404.1563 and 416.963). (DN 14-2, at PageID #75.)

(12) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). (*Id.*)

(13) Beginning on October 1, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (*Id.*)

(14) Beginning on October 1, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966.) (*Id.*)

(15) The claimant's disability ended on October 1, 2014, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)). (DN 14-2, at PageID # 76.)

Brown requested an appeal to the Appeals Council, which denied her request for review on April 23, 2019 (DN 14-2, at PageID #61). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. §

405(b) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. 422.210(c), Brown is presumed to have received that decision five days later, on April 28, 2019. 20 C.F.R. § 422.210(c). Accordingly, Brown timely filed this application on June 18, 2019. *See* 42 U.S.C. § 405(g).

## II. LEGAL ANALYSIS

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities. *See* 42 U.S.C. § 401 – 434 (2018). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2018).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to

follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

Where the cessation of benefits is at issue, the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity. *Kennedy v. Astrue,* 247 Fex. Appx. 761, 764 (6th Cir. 2007). Improvement is measured from the most recent favorable decision that the claimant was disabled. *Id.*; 20 CFR 416.994(b)(1). There is no presumption of continuing disability. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286, n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures outlined in 20 CFR 404.1594 and 416.994 to determine whether a claimant's disability has ended and that she is now able to work. *Kennedy*, 247 Fex. Appx. at 764. The ultimate burden of proof lies with the Commissioner in termination proceedings. *Id.* (citing *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)).

    B.   **Sequential Evaluation Process**

**Title II Claims**

The Commissioner has promulgated regulations that set forth an eight-step sequential evaluation process that an ALJ must follow in evaluating whether an individual continues to be disabled for Title II claims. 20 C.F.R. 404.1594(a) (2018). In summary, the evaluation process proceeds as follows:

  (1)  Is the claimant involved in substantial gainful activity? If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled. (20 CFR 404.1594(f)(1)). If not, proceed to the next step.

  (2)  Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1? (20 CFR 404.1520(d), 404.1525, 404.1526).

If yes, the claimant's disability continues. (20 CFR 404.1594(f)(2)). If not proceed to the next step.

(3) Has there been medical improvement? (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. (20 CFR 404.1594(b)(1)). If medical improvement has occurred, the analysis proceeds to the fourth step. If there has been no medical improvement and the analysis proceeds to the fifth step.

(4) If there has been medical improvement, is this medical improvement related to the claimant's ability to work; *i.e.* whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination? (20 CFR 404.1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3),(4)). If medical improvement is related to the ability to do work, the analysis proceeds to the sixth step. If medical improvement is not related to the ability to do work, the analysis proceeds to the fifth step.

(5) If there has been no medical improvement (step 3) or if the medical improvement is not related to the claimant's ability to do work (step 4), does an exception to medical improvement apply? (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

(6) If medical improvement is shown to be related to claimant's ability to do work or if one of the first group exceptions apply, are all of the claimant's current impairments in combination severe? (20 CFR 404.1594(f)(6); 404.1521). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

(7) If the impairment(s) is severe, does the claimant have the residual functional capacity ("RFC") to return to the claimant's past relevant work? (20 CFR 404.1592(f)(7); 404.1560). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

(8) If the claimant cannot return to past relevant work, does other work exist that the claimant can perform given the claimant's residual functional capacity, age, education and past work experience? (20 CFR 404.1594(f)(8)). If the claimant can perform other work, she is no longer

6

disabled. If the claimant cannot perform other work, her disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

**Title XVI Claims**

The Commissioner has promulgated regulations that set forth a seven-step process for Title XVI claims. 20 CFR 416.994 (2018).

(1) Does the claimant have an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1? (20 CFR 416.920(d), 416.925 and 416.926). If yes, the claimant's disability continues. (20 CFR 416.994(b)(5)(i).)

(2) If not, has there been medical improvement? (20 CFR 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. (20 CFR 416.994(b)(1)(i)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

(3) If there has been medical improvement, is this medical improvement related to the claimant's ability to work, *i.e.* whether there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination? (20 CFR 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 416.994(b)(1)(iii)). If it is, the analysis proceeds to the fifth step. If not, the analysis proceeds to the fourth step.

(4) Does an exception to medical improvement apply? (20 CFR 416.994(b)(5)(iv)). There are two groups of exceptions (20 CFR 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

(5) If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, then are all of the claimant's current impairments in combination

       severe? (20 CFR 416.994(b)(5)(v); *see* 20 CFR 416.921). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, these impairments will not be considered severe in nature and the claimant is no longer considered disabled. If they do, the analysis proceeds to the next step.

(6)    If the impairment(s) is severe, does the claimant have the residual functional capacity ("RFC") to return to the claimant's past relevant work? (20 CFR 416.994(b)(5)(vi); *see* 20 CRF 416.960). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

(7)    If the claimant cannot return to past relevant work, does other work exist that the claimant can perform given the claimant's residual functional capacity, age, education and past work experience? (20 CFR 416.994(b)(5)(vii)). If the claimant can perform other work, the claimant is no longer disabled. If the claimant cannot perform other work, the claimant's disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

### C.    Brown's Contentions

Brown argues that an ALJ's RFC determination at finding nine is not supported by substantial evidence because the ALJ relied upon "stale opinions" to "make up" an RFC without properly developing the record. (DN 17, at PageID # 923.) Plaintiff further argues that the ALJ's determination that Plaintiff could perform other jobs in the national economy at finding fourteen is not supported by substantial evidence. (*Id.*) The undersigned will address each of Brown's contentions below.

A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 CFR 404.1545(a)(1); 20 C.F.R. § 416.945(a) (2018). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id.* Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and

consider the descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends. 20 CFR § 416.945(a)(3); 20 C.F.R. § 416.927(c); 20 CFR 404.1545(a)(3).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. Opinions from nontreating and nonexamining sources are never assessed for "controlling weight," but are instead weighed based on the examining relationship, specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical condition." *Id.*; 20 CFR 404.1527(c)(6); 20 CFR 416.927(c).

In his or her determination of RFC, the ALJ must consider all medically determinable impairments, which include both severe and nonsevere impairments. SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.945(a)(2). A mental RFC determination often considers similar evidence as the specific Paragraph B findings used to determine impairment severity, but the mental RFC determination requires "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments and summarized on the [Psychiatric Review Technique Form]." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); 20 C.F.R. § 416.920a (2018).

Further, though SSR 96-8p mandates "a 'function-by-function' evaluation to determine the plaintiff's RFC, the ALJ is not required 'to produce such a detailed statement in writing.'" *Elder*

*v. Comm'r of Soc. Sec.*, No. 2:15-cv-2740, 2016 U.S. Dist. LEXIS 96018, at *17 (S.D. Ohio July 22, 2016) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)) (report and recommendation adopted in *Elder v. Colvin*, No. 2:15-cv-2740, 2016 U.S. Dist. LEXIS 116508, at *1 (S.D. Ohio Aug. 30, 2016)). Although all medically determinable impairments must be considered, there is no "heightened articulation requirement to explain how each severe or nonsevere impairment impacts the disability determination." *Id.*; *see Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation."); *see also Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (finding that "to require a more elaborate articulation of the ALJ's thought processes would not be reasonable" after the ALJ considered all individual impairments and stated that "based upon the medical evidence . . . the claimant retains the ability to perform his former work.")

The ALJ determined that, based on Plaintiff's current impairments Plaintiff has the physical residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) which consists of:

> …lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently, sitting up to 30 minutes at a time, and standing 15 to 20 minutes at a time. She is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. She should avoid concentrated exposures to extreme cold, and all exposure to hazards. The claimant is able to understand, remember, and carry out simple instructions and procedures involving brief and short learning periods (defined as periods of 30 days or less). She is able to maintain concentration, persistence and pace for simple tasks involving little or no independent judgment and minimal variation. She is limited to occasional interaction with the general public. The claimant is able to adapt to the pressures and changes of a routine work environment.

(DN 14-2, at PageID # 70.)

### A. Incomplete Review of Case Record

An RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of the ALJ. 20 CFR 404.1546(c). "An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439 (6th Cir. 2010).

The regulations provide that Administrative Law Judges "will consider" the medical findings of state agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). When the opinion of a non-examining State Agency medical/psychological advisor is consistent with the record, the opinion represents substantial evidence to support the Administrative Law Judge's decision. *See Atterbery v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989); *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).

When a non-examining source renders an opinion without having the opportunity to review the complete case record, the Administrative Law Judge must consider the subsequently submitted evidence in assessing how much weight to give that source's opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632-33 (6th Cir. 2016); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence "because he failed to properly develop the record and made up Plaintiff's RFC out of whole cloth." (DN 17-1, at PageID # 936.) Plaintiff argues that the ALJ based his RFC determination, in part, on the opinions of non-examining, state agency consultants Dr. Vanderhaagen and Dr. Brophy who both opined, on September 23, 2014 and February 5, 2015, that Plaintiff could occasionally

11

lift ten pounds and frequently lift less than ten pounds. (DN 14-7, at PageID # 492, 687). The state agency consultants opined that Plaintiff can stand and/or walk at least two hours in an eight-hour day, and she can sit about six hours in an eight-hour workday. (*Id.*) The ALJ afforded those opinions "some weight" on the grounds that, "they were based on information contained in the record at the time that the assessments were made, and no medical records generated or provided after that date were considered by these doctors." (DN 14-2, at PageID #73.) However, the ALJ explained that Plaintiff's impairments were more severe than was concluded by the state non-examining doctors. (DN 14-2, at PageID # 74.) Plaintiff argues that it was erroneous for the ALJ to incorporate additional limitations, including sitting and standing restrictions, which were not stated in the state physicians' physical residual functional capacity assessment. (DN 14-2, at PageID #70.)

Plaintiff first argues that the ALJ relied upon stale opinion evidence. (DN 17-1, at PageID # 936.) Plaintiff relies on *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016), however *Miller* is not dispositive because the Court in *Miller* remanded the ALJ's decision in part because the ALJ gave more weight to the opinion of the reviewing physician than an examining source without providing sufficient explanation for doing so when the reviewing physician did not have access to a complete case record and the ALJ did not indicate those facts in the record. *Miller*, 811 F.3d at 834. Further, the ALJ in *Miller* did not actually give significant weight to the reviewing physician's opinion because the RFC provided that claimant could stand up to six hours, when the reviewing physician limited claimant's functional capacity to standing for only two hours. (*Id.*)

The undersigned finds that in the instant case the ALJ specifically acknowledged that the state agency physicians' assessments "were based on information contained in the record at the time that the assessments were made, and no medical records generated or provided after that date

were considered by these doctors." (DN 14-2, at PageID #73.) Accordingly, the ALJ did provide sufficient explanation for the amount of weight accorded to the non-examining physician's physical RFC assessments.

Next, Plaintiff argues that an ALJ should not fashion an RFC in the absence of an opinion unless the Plaintiff has "relatively little physical impairment, such that the ALJ could make a commonsense judgment about Plaintiff's functional capacity." *Gentry v. Comm'r*, No. 1:17-CV-1182, 2018 WL 4305213, at *4 (N.D. Ohio Sept. 10, 2018). (DN 17-1, at PageID # 938.) In *Gentry* the Court found that during the period after the state agency reviewing source opinions, the claimant continued to treat with specialists who generated notes documenting a worsening in her condition, but the ALJ concluded that the claimant's impairments as documented in the notes did not warrant limitations greater than those opined by the state agency reviewing sources. *Id.* Unlike in *Gentry*, in the instant case the ALJ considered further medical evidence and made a more stringent RFC than that recommended by the state agency reviewing sources. (DN 14-2, at PageID #73.)

In response, Defendant argues that the state agency physicians were the only doctors to provide an opinion on Plaintiff's functional limitations, therefore, their opinions were the best medical evidence. *See Watts v. Comm'r of Soc. Sec.*, 179 F.App'x 290, 294 (6th Cir. 2006) ("As for her ability to work, none of Watts's treating doctors during the relevant period (except Dr. Golden in a brief reference to limitations on overhead reaching) made detailed functional capacity analysis, which leaves the functional capacity forms from the medical reviewers as the best evidence.") Defendant also argues that the Sixth Circuit has recognized that "[t]here will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new

evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Kelly v. Comm'r of Soc. Sec.*, 314 F.App'x 827, 831 (6th Cir. 2009).

Defendant argues that though the state agency doctors did not review all of the evidence, the ALJ did. (DN 22, at PageID # 959.) Defendant argues that the ALJ cited to exhibits that were submitted after the state agency doctors issued their opinions and explained that "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level; a different interpretation of the earlier records; and evidence in the form of testimony at the claimant's hearing, consistent with the medical evidence in the record, justifies a conclusion that the claimant's impairments are more severe than was concluded by the state non-examining doctors (Ex. 12F, 13F, 14, 15F, 16F, 17F, 18F, and 19F)." (DN 14-2, at PageID # 74.) Defendant argues to the extent the opinions were outdated, the ALJ considered the evidence that was submitted after Dr. Vanderhaagen and Dr. Brophy provided their opinions and assessed the Plaintiff's limitations based on the complete record. (DN 22, at PageID # 959.)

Dr. Brophy completed his Physical RFC assessment on February 5, 2015. In the ALJ's decision, she explicitly references medical evidence related to Plaintiff's physical condition after that date as follows:

> November 2016 notes show that she complained of lower back pain, aggravated by movement. Examination showed tenderness to palpation of the lumbar spine, with decreased range of motion. Straight leg raising was positive. However, gait was normal and she had good muscular coordination and strength bilaterally (Ex. 14F/47). July 2017 notes show that the claimant reported continued back pain after stopping injections due to pregnancy (Ex. 14F/11). MRI of the lumbar spine showed L4-5 and L5-S1 dessication with minimal diffuse bulging, but no other significant lumbar disc pathology and no significant central canal or neuroforaminal narrowing (Ex. 14F/69). October 2017 notes show that she resumed injections, but with no reported relief (Ex. 12F/13-22). However, November 2017 notes show 70% relief (Ex. 12F/6). February 2018 notes show that the claimant complained of lower back pain. However, examination revealed no abnormal

14

curvatures and no point tenderness. She was started on Mobic (Ex. 14F/33). April 2018 notes show that gait was normal, with good muscular coordination and strength bilaterally (Ex. 14F/37). In May 2018, Danielle Snellen, A.P.R.N., stated that the claimant's symptoms were well controlled with gabapentin, since October 2017 (Ex. 17F/2).

(DN 14-2, at PageID #72-73.) On February 2, 2018, during an appointment the patient herself reported "back pain [since 2006] but … no neck pain, no soft tissue swelling, no joint swelling, no joint pain, no muscle pain, moves all extremities well, and no trauma. She reports numbness, weakness and tingling, but reports no burning, no shooting pain, no headache, no dizziness, and no loss of consciousness." (DN 14-7, at PageID # 698.) The record reflects that on November 9, 2017 Plaintiff experienced 70% pain relief for one month after a LESI L4/L5 injection; on December 21, 2017 Plaintiff experienced 60% pain relief for one week after a Ganglion Impar Block; and on January 5, 2018, Plaintiff experienced 60% pain relief for one month after a #2 Ganglion Impar Block. (DN 14-7, at PageID # 699.) Plaintiff's medical records detail that "it hurts to sit for very long and [she] has to shift from side-to-side." (DN 14-7, at PageID # 708.)

During the hearing, Plaintiff testified "it's like after I stand 15, 20, 30 minutes, I start getting – my feet start going numb." (DN 14-2, at PageID #99.) When asked about whether Plaintiff's impairments affect her ability to sit she testified, "I sit for a little bit, then you'll see me move. So I can move around to keep the – it off of one side, and then I'll switch, and I have to move it around on the other side because I'm not – then that's when my legs go numb too." (DN 14-2, at PageID # 100.) When asked how long she could stay seated if she was able to shift her weight from side to side, Plaintiff responded "Probably about 30 minutes." (*Id.*)

Upon a review of the records 12F, 13F, 14, 15F, 16F, 17F, 18F, and 19F cited to by the ALJ, it appears that the RFC incorporated the medical records after the state examiners' physical

15

RFC assessments and evaluated the Plaintiff's subjective complaints in accordance with 20 CFR 404.1529 and 416.929 and that the RFC is supported by substantial evidence. Further, the ALJ's more restrictive findings do not negate that the reports from Dr. Brophy and Dr. Vanderhaagen are consistent, objective record evidence. *Kepke,* 636 Fed. Appx. at 633.

### B. "Playing Doctor"

Second, Plaintiff argues that because the ALJ did not rely on the state agency physicians in making her RFC, the ALJ was "playing doctor" because the ALJ impermissibly relied upon his own interpretation of the medical data to craft Plaintiff's RFC. (DN 17-1, at PageID # 937.) Plaintiff relies on *Smiley v. Comm'r of Soc. Sec.*, 940 F.Supp.2d 592, 601 (S.D. Ohio 2013). wherein the ALJ "impermissibly relied on her own interpretation of the medical data of record, ignored countless reports regarding the severity of Plaintiff's impairments as well as the limitations caused by those impairments, and improperly substituted her interpretation in place of the opinion of treating and state physicians." However, the undersigned finds *Smiley* distinguishable since in *Smiley* the ALJ disregarded 840 pages of medical evidence indicating that the claimant had numerous signs of fibromyalgia, two RFC assessments of non-examining state agency physicians, reports by treating physicians and the claimant's physical therapy treatment records in determining that Plaintiff could perform medium work. *Smiley,* 940 F.Supp.2d at 599. The ALJ in *Smiley* did not credit any medical opinion evidence in reaching her RFC assessment. *Smiley*, 940 F.Supp.2d at 601. As summarized above, the ALJ in the case before the undersigned relied upon numerous medical records and Plaintiff's own testimony in making the RFC determination.

In response, Defendant argues that the ALJ is charged with the final responsibility in determining a claimant's RFC pursuant to 20 CFR 404.1527(e)(2), 404.1527(f)(2) such that the ALJ did not act as her own medical expert by evaluating medical evidence to assess the Plaintiff's

16

RFC. (DN 22, at PageID # 961.) Defendant argues that contrary to Plaintiff's argument, the ALJ did not play doctor in this instance, because her functional findings were taken directly from either the reports of the reviewing state agency doctors or Plaintiff's own testimony. (DN 14-7, at PageID #491, 686.)

Doctor Eric Vanderhaagen concluded that Plaintiff could occasionally lift and/or carry tenpounds; could frequently lift and/or carry less than ten pounds; could stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour work day; could sit (with normal breaks) for a total of about six hours in a eight hour workday; had no postural limitations, manipulative limitations, visual limitations, communicative limitations; had no environmental limitations except hazards. (DN 14-7, at PageID #491-498.)

Doctor Edward Brophy reviewed Plaintiff's records at the reconsideration level and concluded that Plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds.; stand and/or walk for a total of at least two hours in an eight hour workday; sit for a total of about six hours in an eight hour workday; could occasionally climb, balance, kneel, crouch, and crawl; could frequently balance; had no manipulative limitations, visual limitations, or communicative limitations; and should avoid concentrated exposure to extreme cold and avoid even moderate exposure to hazards. (DN 14-7, at PageID # 687-693.)

The ALJ adopted most of the limitations and included a restriction to allow Plaintiff to alternate between sitting and standing, and a restriction providing Plaintiff should be limited to occasional balancing. (DN 14-2, at PageID # 70.) As stated in *Pickerell v. Saul*, No 3:18-cv-281, 2019 WL 4280589 at *4 (W.D. Ky. Sept. 10, 2019), "[i]t is true that an ALJ's RFC determination must be based upon medical opinions in the record, but that determination should not be a mere regurgitation of a physician's opinion concerning her patient's capabilities."

17

Defendant further argues that the modifications the ALJ made to the state reviewing agency opinions were based on Plaintiff's own testimony as Plaintiff testified that she could probably sit for thirty minutes before she would have to get up and move around and this was incorporated into the RFC. (DN 14-2, at PageID #99.) Plaintiff also testified that she could stand for fifteen, twenty or thirty minutes before her feet started to go numb, and this was incorporated into the RFC wherein the ALJ provided a limitation that would permit Plaintiff to stand for only fifteen to twenty minutes at a time. (DN 14-2, at PageID # 100.) Accordingly, Defendant says that the ALJ did not make up the RFC, but instead relied on Plaintiff's testimony and the opinions of the state agency physicians which is consistent with 20 CFR 404.1546(c). (DN 22, at PageID # 963.)

Lastly, Defendant argues that there was no treating physician's opinion regarding Plaintiff's RFC and that records and notes are not a substitute for a medical opinion. *Burton v. Comm'r of Soc. Sec.,* No. 1:16-cv-96, 2017 WL 903463, *2 (W.D. Ky. Mar. 7, 2016).

The undersigned finds that the ALJ's RFC was supported by medical opinion and though no opinion was adopted in full, the ALJ explained in detail why she gave partial weight to each assessment such that the ALJ was not "playing doctor" or making her own independent medical findings. Plaintiff has failed to show that the evidence submitted after the state agency assessments fatally undermined the accuracy of those assessments. Further, "if anything, the ALJ's discounting of the state agency opinions benefitted [claimant's] case and, therefore, does not constitute error." *Riley v. Berryhill*, No. 3:16-cv-776-DW, 2017 WL 3468556 at *3 (W.D.Ky. Aug. 11, 2017); *see also Mosed v. Comm'r of Soc. Sec.*, No. 2:140cv014357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) (claimant's "argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing.")

### C. Duty to Develop the Record

18

It is well-established that an ALJ has a duty to develop the record. *See Lashley v. Comm'r of Soc. Sec.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Pursuant to 20 C.F.R. § 416.920b(b)(2), if after reviewing the evidence of record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 416.920b(b)(2) (2018). However, an ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, though he may take additional steps to do so, including ordering a consultative valuation at the Social Security Administration's expense. 20 C.F.R. § 416.920b(b)(2)(iii). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Plaintiff argues that rather than obtaining additional evidence regarding the true extent of Plaintiff's impairments, the ALJ crafted an RFC "out of whole cloth," guessing at Plaintiff's ability to perform sustained work activity. (DN 17-1, at PageID # 937). Plaintiff argues that she was unrepresented at the time of the hearing, and her impairments could not be established by commonsense judgments, such that it was incumbent on the ALJ to properly develop the record. (DN 17-1, at PageID # 938.) Plaintiff argues that here, the ALJ should have re-contacted medical sources or ordered additional consultative examinations. 20 C.F.R. 404.1512, 416.912. (*Id.*)

In response, Defendant argues first that even though Plaintiff was not represented during the administrative proceedings, at the outset of the proceedings, the ALJ advised Plaintiff of her right to representation and Plaintiff knowingly waived that right. (DN 14-2, at PageID # 90.) The ALJ asked Plaintiff a substantial number of questions about her medical conditions, treatment received, and how her medical conditions affect her daily activities. (DN 14-2, at PageID # 940114.) The ALJ also discussed in her decision her analysis of Plaintiff's claims, the medical exhibits and

19

Plaintiff's testimony. (DN 14-2, at PageID # 70-74.) Thus, the ALJ recognized that she had a heightened duty to develop the record and accorded Plaintiff a full and fair hearing. *See Belcher v. Covin,* No. 4:14-cv-85, 2015 WL 736933, *3 (W.D.Ky. Feb. 20, 2015).

Further, the Defendant argues the record contained over 850 pages of evidence and 600 of those pages were medical records including diagnostic tests, reports from healthcare professionals, and opinions from reviewing doctors and nurses. (DN 22, at PageID # 964.) An ALJ need only seek additional evidence, or direct a claimant to undergo a consultative examination, when the evidence in the record is inconsistent or insufficient to reach a decision. 20 CFR §404.920b(b). Plaintiff has not demonstrated that there was any insufficiency or inconsistency in the record that the ALJ had a duty to remedy. *See Barron-Green v. Comm'r of Soc. Sec.*, No. 1:18-cv-1705, 2019 WL 4194142, at *8 (N.D. Ohio, Sept. 4, 2019).

Based on the foregoing, the undersigned finds there was sufficient evidence for the ALJ to determine whether Plaintiff continues to be disabled and to make conclusions as to the extent of Plaintiff's impairments, such that the ALJ did not fail to develop the record.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

August 5, 2020

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).