UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00443-GNS-CHL

SHARON MAXINE BROWN                                                    PLAINTIFF

v.

ANDREW SAUL, Commissioner of
Social Security Administration[1]                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Objection (DN 24) to the Magistrate Judge's

Report and Recommendation (DN 23).  The matter is ripe for adjudication.  After review of the

administrative record, the objection is **OVERRULED**.

### I.        STATEMENT OF FACTS

On March 1, 2011, Plaintiff Sharon Maxine Brown ("Brown") filed applications for

Disability Insurance Benefits (hereinafter "DIB") (Title II) and Supplemental Security Income

Benefits (hereinafter "SSIB") (Title XVI) that alleged an April 15, 2010, onset of disability.

(Admin. Rec. 159-65, 166-72, DN 14-5 [hereinafter R.]).  Brown claimed disability as a result of

a hole in her stomach from a failed hernia surgery, depression, anxiety, and posttraumatic stress

disorder.  (R. 67, 76, DN 14-3).  In an initial level decision dated June 23, 2011, the Social Security

Administration (hereinafter "Administration") found that Brown became disabled beginning April

15, 2010.  (R. 63-71, 72-80, DN 14-3).[2]  The Administration based its disability determination on

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a
party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42
U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of
Commissioner of Social Security).
[2] Administrative Law Judge Stacy L. Foster's decision indicates the determination was dated June

the opinion of a non-examining state agency medical consultant that Brown met Listing 1.08 as a result of severe complications from an aborted bariatric surgery. (R. 63-71, 72-80, DN 14-3). The non-examining medical consultant, Dr. Jerry Evans, explained that the bariatric surgery had been aborted due to perforations of Brown's stomach and esophagus; she developed incisional hernias that were repaired with cadaveric mesh that subsequently became infected; she had multiple surgical debridements to address the infections; and she had a very long-open abdominal wound that doctors treated with VAC procedures and frequent debridement. (R. 68, 77, DN 14-3).

On October 20, 2014, the Social Security Administration determined that Brown's disability ended as of October 1, 2014, as a result of medical improvement. (R. 10, DN 14-2; R. 59-60, DN 14-3). The Administration upheld this determination at the reconsideration level, and Brown timely requested a hearing before an Administrative Law Judge. (R. 10, DN 14-2). On June 21, 2018, Administrative Law Judge Stacy L. Foster ("ALJ") conducted a video hearing from Paducah, Kentucky. (R. 10, 33, DN 14-2). Brown participated by video from Owensboro, Kentucky. (R. 10, 33-35, DN 14-2). At the outset, the ALJ explained to Brown that she had a right to representation by an attorney or non-attorney during the hearing. (R. 10, 33-35, DN 14-2). Brown confirmed that she wished to proceed without counsel. (R. 10, 33-35, DN 14-2).

In a decision dated September 19, 2018, the ALJ evaluated whether Brown's disability had ended under Sections 223(f) and 1614(a)(3)(A) of the Social Security Act. (R. 10-20, DN 14-2). The ALJ assessed Brown's case pursuant to the eight-step sequential evaluation process the Commissioner promulgated for DIB applications under Title II (20 C.F.R. §§ 404.1594(f)(1)-(8)), and the seven-step sequential evaluation process the Commissioner promulgated for SSIB

---

25, 2011. (Admin. Rec. 10, DN 14-2 [hereinafter R.]). However, the Disability Determination Explanation documents are dated June 23, 2011. (R. 63-71, 72-80, DN 14-3). The Court will rely on the date set forth in the underlying document.

applications under Title XVI (20 C.F.R. §§ 416.994(b)(5)(i)-(vii)).  (R. 10-20, DN 14-2).  The ALJ concluded that Brown's disability ended on October 1, 2014, because she no longer met Listing 1.08 due to medical improvement of her post-surgical open wound.  (R. 12-14, DN 14-2).  Notably, the ALJ's findings indicate as of as of October 1, 2014, this condition did not even constitute a medically determinable impairment.  (R. 12, DN 14-2).

The ALJ determined that as of October 1, 2014, Brown's lumbar disc disease, depressive disorder, and posttraumatic stress disorder are medically determinable severe impairments.  (R. 12-14, DN 14-2).   The ALJ found these impairments, when considered individually or combination, did meet or medically equal the severity of an impairment listed in 20 C.F.R. Pt. App. 1.  (R. 12, DN 14-2).  The ALJ concluded beginning on October 1, 2014, and based on these current impairments, Brown had the residual functional capacity (hereinafter "RFC") to perform less than a full range sedentary work that consists of lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently; sitting up to 30 minutes at a time, and standing 15 to 20 minutes at a time; she is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; she should avoid concentrated exposure to extreme cold, and all exposure to hazards; she is able to understand, remember, and carry out simple instructions and procedures involving brief and short learning periods (defined as periods of 30 days or less); she is able to maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation; she is limited to occasional interaction with the general public; and she is able to adapt to the pressures and changes of a routine work environment.  (R. 14, DN 14-2).

The ALJ found beginning on October 1, 2014, Brown had been unable to perform her past relevant work because of her above-mentioned RFC.  (R. 18, DN 14-2).  However, the ALJ

determined that beginning on October 1, 2014, Brown had been able to perform a significant number of jobs in the national economy considering her age, education, work experience, and her above-mentioned RFC.  (R. 19-20, DN 14-2).  Thus, the ALJ concluded that Plaintiff's disability ended on October 1, 2014, and she had not become disabled again since that date.  (R. 20, DN 14-2).

On October 16, 2018, Brown requested Appeals Council review of the ALJ's decision (R. 156-58).  On April 23, 2019, the Appeals Council denied her request for review.  (R. 1-4, DN 14-2).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

This action arises from the final decision of the Commissioner concluding that Brown is no longer eligible to receive benefits because her disability ended on October 1, 2014, as a result of medical improvement and she had not become disabled again since that date.  (Compl. ¶¶ 1, 2, DN 1).  Brown filed a timely appeal and the Court referred the matter to the Magistrate Judge for a report and recommendation.  (R. & R. 1, DN 23).  On August 5, 2020, the Magistrate Judge issued a report and recommendation affirming the final decision of the Commissioner.  (R. & R. 1).  Brown then filed an objection on August 19, 2020.  (Pl.'s Obj. 1, DN 24).

## II.   <u>JURISDICTION</u>

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision.  *See* 42 U.S.C. § 405(g).

### III.   <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* the portions of the report and recommendation to which objections have been filed, and the Court may accept, reject, modify the report and recommendation, in whole or in part.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  While specific objections are entitled to *de novo* review, "poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal."  *Bardwell v. Colvin*, No. 5:15-CV-00196-GNS-LLK, 2017 WL 5885378, at *1 (W.D. Ky. Jan. 31, 2017) (internal quotation marks omitted) (citation omitted).  As the Sixth Circuit has noted, "a general objection to a [magistrate judge's] report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed.  The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted).

Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  It is "more than a scintilla of evidence but less than a preponderance . . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted) (citations omitted).  Where substantial evidence supports the ALJ's decision, a court is obliged to affirm.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted).  A court should not attempt to resolve conflicts of evidence or questions of credibility.  *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Court may consider any evidence in the record, regardless of whether cited in the ALJ's decision.  *See Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

## IV.   **DISCUSSION**

Brown objects to the Magistrate Judge's finding that the ALJ complied with her duty to adequately develop the administrative record before assessing Brown's physical RFC.  (Pl.'s Obj. 1-4 (citing R. & R. 19-20)).  When, as here, a claimant is not represented by counsel at the administrative hearing, an ALJ has a special duty to ensure that a full and fair administrative record is developed.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).  Each case must be examined on its own merits to ascertain whether the ALJ fully developed the record and provided the claimant a full and fair hearing.  *Id.*[3]

The RFC finding is an ALJ's ultimate determination of what a claimant can still do despite her physical and mental limitations.  20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC).  An ALJ makes this finding based on a consideration of medical opinions and all other evidence in the case record.  20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c).  Medical opinions expressing functional limitations imposed by a claimant's physical or mental impairments

---

[3] Brown's objection does not extend to the question of whether the ALJ provided her with a full and fair hearing.  Notwithstanding, the transcript of the administrative hearing shows that the ALJ advised Brown of her right to representation and that she knowingly and voluntarily waived it both orally and in writing.  (R. 33-35); s*ee Lashley*, 708 F.2d at 1051-52.  The ALJ carefully explained the applicable legal standards, explained the definition of disability, admitted all documents from the Administration's file as exhibits to the hearing, and asked Plaintiff if she had any additional papers she might like to present at the hearing.  (R. 35-36, 54, 57); *Lashley*, 708 F.2d at 1051-52*.* Further, the ALJ asked a substantial number of questions to Plaintiff about her medical conditions, treatment she received, why she is not able to work, and how her medical conditions affect her daily activities.  (R. 37-54); *Lashley*, 708 F.2d at 1051-52*.*  The undersigned concludes that the ALJ recognized her heightened duty to develop the record and accorded Plaintiff a full and fair hearing.  *Lashley*, 708 F.2d at 1051-52*.*

can be generated by treating physicians or psychologists, consultative examining physicians or psychologists, state agency physicians or psychologists who reviewed the claimant's medical records, or medical experts who testify at hearings before an Administrative Law Judge. 20 C.F.R. §§ 404.1502, 404.1513(a)(2), 404.1513a(b), 404.1527, 404.1545(a)(3), 416.902, 416.913(a)(2), 416.913a(b), 416.927, 416.945(a)(3). In the instant case, there are only two medical opinions expressing functional limitations imposed by Brown's physical impairments. They were prepared by non-examining state agency physicians, Drs. VanderHaagen and Brophy. The regulations direct that ALJs are not required to adopt such opinions, but they "must consider" them according to 20 C.F.R. §§ 404.1527 and 416.927[4] because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

Dr. VanderHaagen reviewed the administrative record, which included an MRI of Brown's lumbar spine,[5] and rendered his opinion on September 23, 2014. (R. 430-37, DN 14-7). He opined that Brown could occasionally lift and/or carry ten pounds; could frequently lift and/or carry less than ten pounds; could stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour work day; could sit (with normal breaks) for a total of about six hours in a eight hour workday; had no postural, manipulative, visual, or communicative limitations; had no environmental limitations except to avoid all exposure to hazards (machinery, heights, etc.). (R. 430-37, DN 14-7).

---

[4] The rules in 20 C.F.R §§ 404.1527 and 416.927 apply in evaluating the medical opinion evidence from the non-examining state agency physicians because Brown filed her claims before March 27, 2017. *See* 20 C.F.R §§ 404.1520c, 404.1527, 416.920c, 416.927.

[5] On March 28, 2014, Brown underwent an MRI of her lumbar spine without contrast. (R. 339, DN 14-7). It showed the presence of degenerative disc phenomenon at the L4-L5 and L5-S1 levels, a small peripheral annular tear at L4-L5 without disc protrusion, and facet arthropathy of L5-S1 on the left. (R. 339, DN 14-7).

Dr. Brophy reviewed the administrative record, which included additional treatment records regarding Brown's lumbar spine, and rendered his opinion on February 5, 2015. (R. 625-32, DN 14-7). Dr. Brophy adopted almost all of Dr. VanderHaagen's exertional limitations,[6] and agreed that Brown had no manipulative, visual, or communicative limitations. (R. 625-32, DN 14-7). As to postural limitations, Dr. Brophy restricted Brown to frequently balancing and occasionally climbing ramps/stairs, climbing ladders/ropes/scaffolds, stooping, kneeling, crouching, and crawling. (R. 625-32, DN 14-7). As to environmental limitations, Dr. Brophy concluded that Brown should avoid concentrated exposure to extreme cold and even moderate exposure to hazards (machinery, heights, etc.). (R. 625-32, DN 14-7).

After Drs. VanderHaagen and Brophy rendered their opinions, the administrative record received more than 100 pages of additional medical evidence addressing treatment of Brown's physical and mental impairments from November 2016 through June 2018. (R. 633-852, DN 14-7 to 14-8). The ALJ provided an accurate summary of the additional medical evidence addressing Brown's lower back condition, including the MRI taken on July 12, 2017.[7] (R. 16-17, DN 14-2).

In the context of assigning weight to these medical opinions, the ALJ observed that Drs. VanderHaagen and Brophy had assessed Brown with the ability to perform a range of sedentary work due to postural and environmental limitations. (R. 17-18, DN 14-2). The ALJ then commented:

---

[6] Dr. VanderHaagen marked "push and/or pull (including operation of hand and/or foot controls)" as "unlimited, other than as shown for lift and/or carry". (R. 431 ¶ 5). Dr. Brophy did not mark any exertional limit when reviewing that paragraph. (R. 626 ¶ 5).

[7] At both L4-L5 and L5-S1 the MRI showed disc desiccation with minimal diffuse annular bulging with a central annular tear/high intensity zone. (R. 734-35, DN 14-7). The ALJ indicated that it "showed L4-5 and L5-S1 dessication [sic] with minimal diffuse bulging, but no other significant lumbar disc pathology and no significant central canal or neuroforaminal narrowing (Ex. 14F/69)." (R. 734-35, DN 14-7).

> "[s]ome weight is given to these assessments because they were based on information contained in the record at the time that the assessments were made, and no medical records generated or provided after that date were considered by these doctors.   However, additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level; a different interpretation of the earlier records; and evidence in the form of testimony at the claimant's hearing, consistent with medical evidence in the record, justifies a conclusion that the claimant's impairments are more severe than was concluded by the state non-examining doctors (Ex. 12F, 13F, 14F, 15F, 16F, 17F, 18F, and 19F).

(R. 17-18, DN 14-2).   Brown argues by concluding the evidence post-dating both opinions warranted greater restrictions, the ALJ acknowledged that these opinions are stale, and the Magistrate Judge erred in finding "the ALJ's more restrictive findings do not negate that the reports from Dr. Brophy and Dr. Vanderhaagen [sic] are consistent, objective record evidence."   (Pl.'s Obj. 2 (quoting R. & R. 16)).

The ALJ appropriately considered the subsequently received medical evidence in assessing how much weight to give the opinions of Drs. VanderHaagen and Brophy.   (R. 16-17, 17-18, DN 14-2).   *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632-33 (6th Cir. 2016); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).   The ALJ also appropriately considered Brown's hearing testimony to the extent it was "consistent with medical evidence in the record[.]" (R. 17-18, DN 14-2).   Specifically, the ALJ was referring to Brown's testimony indicating she can stand for 15 to 30 minutes before experiencing numbness in her feet and can sit for about 30 minutes before she must get up and stand for a while.   (R. 43-44, DN 14-2).   Instead of relying on the above quoted general comment, the Court will compare the medical opinions of Drs. VanderHaagen and Brophy with the ALJ's physical RFC findings to assess whether the ALJ concluded their opinions were stale.

The ALJ's RFC finding, limiting Brown to performing a range of sedentary work, is generally consistent with the opinions of Drs. VanderHaagen and Brophy.   (*Compare* R. 14, DN

14-2, *with* R. 430-37, 625-32, DN 14-7).   Thus, the ALJ substantially relied on these medical opinions when she made her physical RFC determination.   But the ALJ also depended on subsequently received evidence to justify certain modifications to some of the exertional, postural, and environmental limitations expressed by Drs. VanderHaagen and Brophy.   Those adjustments are specifically discussed in the three paragraphs that follow.

Drs. VanderHaagen and Brophy opined that Brown can stand and/or walk at least two hours in an eight-hour workday, and she can sit "about" six hours in an eight-hour workday.   (R. 431, 626, DN 14-7).   These exertional limitations are consistent with the ability to perform sedentary work.   *See* 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling 96-9p (hereinafter "SSR").[8]   The ALJ's physical RFC finding implicitly adopted their opinions concerning the total number of hours that Brown can stand and/or walk and sit in an eight-hour workday.   (R. 14, DN 14-2).   But the ALJ also considered the subsequently received evidence and gave Brown the benefit of the doubt by adding restrictions on how long she can stand and/or walk and sit at one time without needing to change her position.   Specifically, the ALJ's physical RFC finding limits Brown to "standing 15 to 20 minutes at a time" and "sitting up to 30 minutes at a time . . . ."[9]   (R. 14, DN 14-2).

Dr. VanderHaagen opined that Brown has no limitation on balancing.   (R. 431-32, DN 14-7).   But Dr. Brophy opined that Brown is limited to frequently balancing.   (R. 626-27, DN 14-7).   The term "'[f]requently' means occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)."   (R. 625, DN 14-7).   Thus, Dr. Brophy limited Brown's balancing to no more than six hours of an eight-hour workday.   The ALJ decided that the subsequently

---

[8] https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html
[9] The limitations are consistent with Brown's testimony that she can stand for 15 to 30 minutes and can sit for about 30 minutes before having to change her position.   (R. 43-44, DN 14-2).

received evidence justified further limiting Brown to "occasional" balancing in the physical RFC finding.  (R. 14, 17, DN 14-2).  "Occasional" means balancing no more than two hours of an eight-hour workday.  *See* SSR 96-9p.

Finally, as to environmental limitations, Dr. VanderHaagen opined that Brown should avoid all exposure to hazards (machinery, heights, etc.) because he believed that her use of narcotics for chronic pain and her multiple surgeries would likely make her unable to respond quickly in a dangerous situation.  (R. 434, DN 14-7).  Dr. Brophy concluded that Brown should avoid concentrated exposure to extreme cold and avoid even moderate exposure to hazards (machinery, heights, etc.).  (R. 629, DN 14-7).  The ALJ determined that the subsequently received evidence justified adoption of the more restrictive environmental limitations expressed by Drs. VanderHaagen and Brophy.  (R. 17-18, DN 14-2).  Thus, the physical RFC finding indicates that Brown should avoid concentrated exposure to extreme cold, and all exposure to hazards.  (R. 14, DN 14-2).

As mentioned above, Brown's objection to the Magistrate Judge's finding is premised on an assertion that the ALJ acknowledged the medical opinions of Drs. VanderHaagen and Brophy are stale.  (Pl.'s Obj. 2).  To the contrary, the analysis in the preceding four paragraphs confirms that the ALJ substantially relied on the medical opinions of Drs. VanderHaagen and Brophy as well as subsequently received medical and testamentary evidence in making the physical RFC finding.  In fact, the record demonstrates the ALJ harmonized the medical opinions with the subsequently received medical and testamentary evidence in making findings on Brown's exertional and the environmental limitations.  (*Compare* R. 14, DN 14-2, *with* R. 431, 434, 626, 629, DN 14-7).  Regarding the postural limitation, the ALJ agreed with Dr. Brophy that Brown had a restriction on balancing.  (*Compare* R. 14, DN 14-2, *with* R. 431-32, 626-27, DN 14-7).  The

ALJ merely relied on the subsequently received medical evidence to conclude that Brown should be limited to occasional balancing. (*Compare* R. 14, DN 14-2, *with* R. 431-32, 626-27, DN 14-7). Considering the actual circumstances, Brown has not demonstrated that the ALJ concluded these medical opinions were stale at the time she made the physical RFC findings. Furthermore, the Magistrate Judge appropriately concluded the ALJ's more restrictive findings do not negate that the medical opinions of Drs. VanderHaagen and Brophy are consistent, objective record evidence. (R. & R. 16).

Next, Brown takes issue with the Magistrate Judge's attempt to distinguish this matter from the facts in *Smiley v. Commissioner of Social Security*, 940 F. Supp. 2d 592, 601 (S.D. Ohio 2013). (Pl.'s Obj. 2-3). Brown argues the Magistrate Judge failed to appreciate she relied on *Smiley* for the general proposition that the ALJ cannot play doctor and make up an RFC based on her own interpretation of the subsequently received medical evidence. (Pl.'s Obj. 2-3). Brown acknowledges that the ALJ afforded the medical opinion of Drs. VanderHaagen and Brophy "some" weight. (Pl.'s Obj. 2-3). Brown contends that the ALJ still crafted a physical RFC that provided for limitations the ALJ made up out of whole cloth and the Magistrate Judge acknowledged as much in his report. (Pl.'s Obj. 3 (citing R. & R. 16)).

After acknowledging why Brown relied on *Smiley*, the Magistrate Judge explained it was distinguishable from the circumstances before the Court. (R. & R. 16). Specifically, the Magistrate Judge noted that in *Smiley* "the ALJ disregarded 840 pages of medical evidence indicating that the claimant had numerous signs of fibromyalgia, two RFC assessments of non-examining state agency physicians, reports by treating physicians and the claimant's physical therapy treatment records in determining that Plaintiff could perform medium work." (R. & R. 16 (citing *Smiley*, 940 F. Supp. 2d at 599)). The Magistrate Judge explained, in contrast to the ALJ

in *Smiley* who did not credit any medical opinion evidence in reaching her RFC assessment, the ALJ here supported her physical RFC findings with the medical opinions of Drs. VanderHaagen and Brophy, and although neither opinion was adopted in full, "the ALJ explained in detail why she gave partial weight to each assessment such that the ALJ was not 'playing doctor' or making her own independent medical findings."  (R. & R. 16, 18 (citing *Smiley*, 940 F. Supp. 2d at 601)). Further, the Magistrate Judge noted that to the extent the ALJ discounted the limitations in those medical opinions it benefitted Brown's case and, therefore, did not constitute error.  (R. & R. 18).

The Magistrate Judge's findings are consistent with the Court's analysis above.  While not adopting the opinions of Drs. VanderHaagen and Brophy in full, the ALJ provided a sufficient explanation to ascertain why she gave full or partial weight to each of the restrictions in these medical opinions.  As such, the ALJ was not "playing doctor" by interpreting raw medical data in functioning terms when she made her RFC findings.  Further, the Court's analysis above confirms that Brown benefitted from those instances where the ALJ gave partial weight to the restrictions in the medical opinions.  Clearly, Brown's reliance on *Smiley* is misplaced and the Magistrate Judge provided a more than adequate explanation for reaching that conclusion.

Next, Brown challenges the Magistrate Judge's determination that Brown failed to demonstrate there was an insufficiency or inconsistency in the record that the ALJ had a duty to remedy by seeking additional evidence or directing Brown to undergo a consultative examination. (Pl.'s Obj. 3-4 (citing R. & R. 20)).  Brown contends an insufficiency in the record existed because the ALJ acknowledged that the opinions of Drs. VanderHaagen and Brophy were stale.  (Pl.'s Obj. 3-4 (citing R. 17, DN 14-2)).

The Court agrees with the Magistrate Judge that the regulations indicate an ALJ may need to seek additional evidence or direct the claimant to undergo a consultative examination when the

evidence in a claimant's case is insufficient or inconsistent.   20 C.F.R. §§ 404.1520b(b), 416.920b(b).[10]   The Court also agrees with the Magistrate Judge's determination that Brown did not demonstrate there was any insufficiency or inconsistency in the record that the ALJ had a duty to remedy.  (R. & R. 20 (citing *Barron-Green v. Comm'r of Soc. Sec.*, No. 1:18-cv-1705, 2019 WL 4194142, at *8 (N.D. Ohio, Sept. 4, 2019))).   For the reasons set forth above, the Court has already explained why the medical opinions were not stale and that both the ALJ and the Magistrate Judge did not acknowledge the medical opinions were stale.  Additionally, Brown's efforts to distinguish the circumstances in this matter from those in *Barron-Green* are misplaced.  (Pl.'s Obj. 3-4).  The Magistrate Judge cited *Barron-Green* for the limited purpose of establishing that Brown had the burden of pointing to specific evidence that meets either condition in the regulation.  (R. & R. 20).

In sum, the Court agrees with the Magistrate Judge's finding that the ALJ complied with her duty to adequately develop the administrative record before assessing Brown's physical RFC.

## V.    CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 23) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and Plaintiff's Objection (DN 24) is **OVERRULED**.  The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge

United States District Court

October 19, 2020

cc:   counsel of record

---

[10] The Magistrate Judge's report contains a typographical error because it identifies the applicable regulation as Section 404.920b(b) instead of Section 404.1520b(b).

14